UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

In re

SECTION 119 LLC,

Debtor.

Chapter 11
Case No. 26-__10254____

# DECLARATION PURSUANT TO LOCAL RULE 2015-2 AND IN SUPPORT OF FIRST DAY MOTIONS

**GREGG CAREY**, hereby declares as follows:

1. I am the Managing Member of Section 119 LLC, the debtor and debtor in possession in the above captioned Chapter 11 bankruptcy case ("Section 119" or the "Debtor"), and respectfully submit this Declaration pursuant to Local Rule 2015-2 and in support of the Debtor's *Motion for Cash Collateral Debtor's Motion for Entry of An Interim and Final Order (I) Authorizing the Debtor to Use Cash Collateral; (II) Determining that Creditors are Adequately Protected; and (III) Scheduling a Final Hearing* ("Cash Collateral Motion") and *Motion for Entry of an Interim and Final Order (I) Authorizing the Debtor to (A) Maintain Certain Customer Programs and (B) Honor or Pay Related Prepetition Obligations to Its Customers; and (II) Scheduling a Final Hearing* ("Customer Programs Motion").

2. The Debtor has filed all required bankruptcy schedules and a summary of the schedules with its petition.

3. The Debtor presently has no employees.

4. The Debtor's inventory is warehoused with third-party logistics providers as follows: Baja Fulfillment (Mexico) and Portless (China and Vietnam).

5. The amounts to be paid to Managing Member Gregg Carey for services rendered over the next thirty (30)-day period is approximately $20,000. There are no other members or

officers providing services or receiving compensation.

6. Over the next thirty (30) days, the Debtor anticipates cash receipts of approximately $230,000 and disbursements of approximately $160,470.

7. As part of its first day filings, the Debtor has prepared a proposed Budget that is attached as Exhibit 1 to the proposed Interim Order granting the Debtor's Cash Collateral Motion. Based on my personal experience with the Debtor's business operations, I believe the Budget to contain reasonable projections for the Debtor's anticipated income and expenses over that same period of time.

8. Additionally, the Debtor's Customer Programs Motion has been filed in order to maintain programs that are critically important for continuing the Debtor's business operations and maintaining customer satisfaction and loyalty without interruption throughout the duration of this Chapter 11 case.

## BACKGROUND AND EVENTS LEADING TO BANKRUPTCY FILING

### Background

9. Section 119 is a direct-to-consumer e-commerce apparel company based in Hudson, New York, operating primarily as a licensee of Grateful Dead intellectual property. The company purchases merchandise manufactured to its specifications and stores its inventory with third-party logistics providers in Mexico, China, and Vietnam, as well as in the United States, (Indiana), for shipment to customers placing orders throughout the United States and around the globe. The company's website provides additional background information: https://section119.com/.

10. The company does not have any employees. The business is managed by Gregg Carey, with Philippines-based independent contractors providing the operating labor for the

business, including product design, marketing, demand planning, supply chain management, customer service, and finance.

11. Section 119 began operations in February of 2019, and over several years developed meaningful brand equity, a large and repeat customer base, proprietary designs, and durable licensing and vendor relationships. The company had $6,531,000 in annual sales in 2024 (its high water mark) and had $4,560,000 in sales in 2025.

12. The company's principal assets are its vendor and customer relationships, including approximately 175,000 customers and 125,000 prospective customers in its database, as well as its licensing relationship with a master licensee of Grateful Dead intellectual property.

## Events Leading to Bankruptcy Filing

13. The company's financial distress did not arise from a single failure, but from a convergence of operational disruptions, capital constraints, and governance impediments that ultimately overwhelmed an otherwise viable operating business.

14. From an operational standpoint, the company was required to change third-party logistics providers twice within a relatively short period. Each transition resulted in disruption, incremental costs, and temporary inefficiencies. In addition, the company's primary lender, Ampla, unexpectedly collapsed shortly before a critical holiday inventory purchasing window, materially impairing liquidity and forcing reliance on short-term, high-cost financing through merchant cash advance companies to fund operations.

15. Governance challenges further compounded these pressures. A majority owner ceased meaningful involvement in the business several years ago, leading to unresolved ownership and control issues that constrained strategic flexibility, deterred new capital, and complicated negotiations with counterparties.

16. The company pursued strategic alternatives, including a potential transaction in July 2024 that would have satisfied substantially all outstanding obligations. That transaction collapsed at the final stage due to factors outside the company's control, leaving the business exposed at a moment of heightened fragility.

17. In mid-2025, the imposition and escalation of tariffs materially increased landed costs, compressing already thin margins and triggering an acute cash constraint. As a direct result, the company was forced to reduce its holiday inventory investment by approximately fifty percent (50%) compared to historical levels, leading to a corresponding decline in seasonal revenue. This dynamic accelerated liquidity stress in a business with high operating leverage and limited tolerance for disruption, despite continued customer demand and brand relevance.

18. Importantly, the company's past operations and challenges have resulted in operational learning, cost rationalization, and increasing discipline. By the time of this filing, the business is operating with a lean expense base and has addressed many of the structural inefficiencies that historically impaired profitability. Management believes the underlying enterprise retains value well in excess of a liquidation and that this value can best be preserved through a structured, court-supervised process.

19. This Subchapter V filing is intended to stabilize operations, address creditor claims in an orderly manner, and resolve governance and balance-sheet constraints. The company has received indications of interest from multiple parties and intends to pursue a value-maximizing transaction, potentially through a Bankruptcy Code § 363 sale process, while also pursuing a possible restructuring through confirmation of a plan of reorganization.

20. Section 119 commenced this Chapter 11 case in order to preserve its assets and business operations for the benefit of its creditors, customers and owners.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: March 11, 2026
      Albany, New York

**SECTION 119 LLC**

By: _/s/ Gregg Carey_
Gregg Carey, Managing Member