UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re<br><br>Section 119 LLC,<br><br>Debtor. | Chapter 11<br>Case No. 26-10254 |

**CHAPTER 11 PLAN OF REORGANIZATION OF SECTION 119 LLC**
**DATED JUNE 9, 2026**

This Small Business Subchapter V Chapter 11 Plan of Reorganization (the "Plan") under Chapter 11 of the Bankruptcy Code ("Code") is presented to you to inform you of the proposal of reorganization of Section 119 LLC, the Debtor and Debtor-in-Possession herein (the "Debtor") and to seek your vote to accept the Plan.

You are encouraged to carefully review the full text of this document before deciding how to vote on the Plan. To assist you in your review, please note that a list of definitions appears within this document.

**A HEARING ON THE CONFIRMATION OF THE PLAN IS SCHEDULED AS SET FORTH IN THE ENCLOSED COURT ORDER.**

**IN ADDITION TO CASTING YOUR VOTE TO ACCEPT OR REJECT THE PLAN, YOU MAY OBJECT TO CONFIRMATION OF THE PLAN, IF YOU WISH TO OBJECT TO CONFIRMATION OF THE PLAN, YOU MUST DO SO BY THE DEADLINE SET FORTH IN THE ENCLOSED COURT ORDER.**

**YOUR BALLOT STATING HOW YOU ARE VOTING ON THE PLAN MUST BE RETURNED BY THE DEADLINE SET FORTH IN THE ENCLOSED COURT ORDER. THE BALLOT MUST BE MAILED TO THE FOLLOWING ADDRESS:**

**WHITEMAN OSTERMAN & HANNA LLP**
**Attn: Justin A. Heller, Esq.**
**Attorney for Debtor**
**80 State Street, 11th Floor**
**Albany, NY 12207**

**Your rights may be affected by this Plan. You should consider discussing this document with an attorney.**

## ARTICLE I – INTRODUCTION

**1.01: History of Business**

Section 119 is a direct-to-consumer e-commerce apparel company based in Hudson, New York, operating primarily as a licensee of Grateful Dead intellectual property. The company purchases merchandise manufactured to its specifications and stores its inventory with third-party logistics providers in Mexico, China, and Vietnam, as well as in the United States, (Indiana), for shipment to customers placing orders throughout the United States and around the globe. The company's website provides additional background information: https://section119.com/.

Section 119 began operations in February of 2019, and over several years developed meaningful brand equity, a large and repeat customer base, proprietary designs, and durable licensing and vendor relationships. The company had $6,531,000 in annual sales in 2024 (its high water mark) and had $4,560,000 in sales in 2025. The company's principal assets are its vendor and customer relationships, inventory, and its licensing relationship with a master licensee of Grateful Dead intellectual property. However, the license is set to expire on June 30, 2026.

The Debtor's financial struggles were the result of a combination of issues, including, but not limited to, the loss of a key source of working capital, having to change third party logistics providers several times, burdensome merchant cash advance loans, the imposition of tariffs in 2025, and a dispute involving the majority member of the Debtor. As a result of the combination of all of these issues, continuation of operations under those circumstances was not feasible and the Debtor decided to commence this Chapter 11 case in order to pursue a Section 363(f) sale and to preserve the value of the estate for the benefit of creditors.

**1.02: Liquidation Analysis**

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity-interest holders would receive in a Chapter 7 liquidation. Here, the Plan's distribution scheme below is effectively a liquidation analysis as it proposes to distribute the entirety of Net Proceeds, as defined below in Article II, generated by a Section 363(f) sale of all or substantially all of the Debtor's assets consistent with the Code's priority scheme that would control in a Chapter 7 case.

**1.03: Ability to Make Future Plan Payments and Operate Without Further Reorganization**

As is more fully set forth below, the Debtor is seeking to sell all or substantially all of its assets pursuant to a Section 363(f) sale and then distribute the net proceeds of such sale to creditors pursuant to terms in the Plan. As such, the Debtor will cease operating upon closing of the sale. The Debtor anticipates that the sale will close in July 2026.

## ARTICLE II – SUMMARY

This Plan proposes to pay creditors of the Debtor from the proceeds of a Section 363(f) sale of all or substantially all of its assets.

The Debtor has been actively pursuing a potential sale of its assets both pre- and post-petition. Despite receiving interest from several parties in the merchandise and licensing industry, no prospective purchasers expressed a desire to execute an asset purchase agreement and seek approval of a sale pursuant to Section 363(f) of the Code until recently. The prospective purchaser, a business that already sells merchandise pursuant to a license of another band (the "Prospective Purchaser") is finalizing an asset purchase agreement to purchase substantially all of the Debtor's assets for approximately $815,000. Critically, the Prospective Purchaser engaged in lengthy negotiations with the Debtor's licensor, and was able to secure the licensor's approval. The Debtor's license does not permit the assignment of the license without the licensor's approval.

The Debtor expects to sign an asset purchase agreement and pursue a private Section 363(f) sale on account of the licensor's approval of the sale to the Prospective Purchaser and the fact that the license would otherwise expire on June 30, 2026. The Licensor has agreed to a brief extension of the license agreement for the sole purpose of allowing this sale to close. At closing, the Debtor will pay all valid and perfected liens on assets sold (Class 1 Claims) and any cure amounts required to assume and assign certain contracts (estimated to be approximately $200,000). After payment of these amounts, the Debtor plans to distribute the balance of the sale proceeds (the "Net Proceeds") to pay unclassified claims (such as administrative expense claims and priority tax claims) in full and then distribute the remainder of Net Proceeds to holders of allowed general unsecured claims in Class 2 on a pro rata basis. At this time, the Debtor estimates in good faith that the Net Proceeds will be approximately $185,000.00.

This Plan provides for the following classes:

| | |
|---|---|
| 1 | Class of Secured Claims |
| 1 | Class of General Unsecured Claims |
| 1 | Class of Equity Holders |

**2.01**: **Payment of non-priority unsecured claims.** Non-priority unsecured creditors holding allowed claims will receive distributions, which the proponent of this Plan has valued at approximately 5 to 8 percent.

**2.02: Payment of administrative expenses and priority claims:** This Plan provides for full payment of administrative expenses and priority claims. All creditors and equity security holders should refer to Articles 3 through 6 of this Plan for information regarding the precise treatment of their claim.

***Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)***

## ARTICLE III - CLASSIFICATION AND TREATMENT OF CLAIMS

**3.01: Unclassified claims**. Under section § 1123(a)(1), allowed administrative expenses and priority tax claims are not in classes. Holders of such claims should review Article IV of this Plan to determine treatment of such claims.

**3.02: Class 1 – Secured Claims**. Allowed Secured Claims are Claims secured by property of the Debtor's bankruptcy estate (or that are subject to set off) to the extent allowed as secured Claims under Section 506 of the Code. If the value of the collateral or setoffs securing the Creditor's Claim is less than the amount of the Creditor's Allowed Claim, the deficiency will be classified as a general unsecured Claim.

The Debtor intends on paying all Allowed Secured Claims to the extent such claims are secured by collateral directly from the Net Proceeds of the sale at the time of closing.

| Class Number | Creditor | Impairment | Treatment |
|---|---|---|---|
| 1 | Shopify (secured claim formerly held by Web Bank) | Yes | Payment in full of secured portion of claim of approximately $192,027 at Closing |

*****The Debtor proposes to reclassify the following filed secured claims as general unsecured claims******

| Class Number | Creditor | Impairment | Treatment |
|---|---|---|---|
| 2 | ClearCo | Yes | Wholly unsecured due to security interest only in "future receivables". Moreover, claim may be objected to on criminally usurious grounds. |
| 2 | U.S. Small Business Administration | Yes | Wholly unsecured because the SBA's security interest was not perfected through the filing of a UCC-1 Financing Statement in Delaware. |

**3.03: Class 2 – Unsecured Claims**. The Debtor has scheduled and/or reclassified unsecured claims and unsecured proofs of claims filed against it in the total aggregate amount of approximately $2,080,000.

After payment of all unclassified claims set forth in Article, the Debtor will distribute the remaining Net Proceeds to pay Allowed general unsecured claims on a pro rata basis. Subject to the Debtor's right to object to claims, claims shall be deemed to be Allowed Claims in the amounts reflected in timely filed proofs of claim, or, where no timely proof of claim was filed, in the amounts set forth in the Debtor's bankruptcy Schedules. The Debtor estimates that Class 2 creditors will receive distributions of Net Proceeds in amounts equal to approximately 5 – 8 % of the amount of their claims, provided, however, that the Debtor shall have no obligation to make a distribution on account of any claim if the amount to be distributed is less than $25.

**3.04: Equity interests in the Debtor**. Sleeping Monkey LLC, Show of Life, Inc., OG Penguin Life, LLC, and Donald Jefferson, are the owners of the Debtor's equity interests. The holders of equity interests shall not receive any distributions of Net Proceeds on account of their equity interests. Moreover, the equity holders will retain their interests in the Debtor.

## ARTICLE IV - TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS, PRIORITY TAX CLAIMS, AND QUARTERLY AND COURT FEES

**4.01: Unclassified claims**. Under section § 1123(a)(1), allowed administrative expenses and priority tax claims are not in classes. The Debtor estimates that there are approximately $80,000 in priority taxes that will be paid in full.

**4.02: Administrative expenses**. Administrative expenses allowed under § 503 of the Code, will be paid in full on the effective date of this Plan, in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.

The Debtor estimates that the Professional Charges of Chapter 11 Professionals through the Effective Date will be as follows:

| Administrative Claimant | Role | Estimated Administrative Expenses |
|---|---|---|
| Whiteman Osterman & Hanna LLP | Debtor's Counsel | $75,000 (net of retainer) |
| Eric Huebscher | Subchapter V Trustee | $7,500 |
| Other | | $5,000 |

**4.03: Priority tax claims**. Each holder of an allowed priority tax claim will be paid in full within thirty days of the Effective Date, provided that the Closing occurs at least 10 days prior.

**4.04: Statutory fees**. All unpaid fees required to be paid under 28 U.S.C. § 1930 that are owed on or before the effective date of this Plan will be paid on or before the effective date.

**4.05: Prospective quarterly fees**. All quarterly fees required to be paid under 28 U.S.C. § 1930(a)(6) or (a)(7) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code.

## ARTICLE V – ALLOWANCE AND DISALLOWANCE OF CLAIMS

**5.01 : Time to Object to Claims.** The Debtor may object to the amount or validity of any Claim within 60- days of the Confirmation Date by filing an objection with the Bankruptcy Court and serving a copy of the objection on the holder of the Claim. The Claim objected to will be treated as a Disputed Claim under the Plan. If and when a Disputed Claim is finally resolved by the allowance of the Claim in whole or in part, the Debtor will pay the Allowed Claim in accordance with the Plan.

**5.02: Disputed claim.** A disputed claim is a claim that has not been allowed or disallowed and as to which either: (i) A proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) No proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

**5.03: Delay of distribution on a disputed claim.** No distribution will be made on account of a disputed claim unless and until it is allowed.

**5.04: Settlement of disputed claims.** The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Federal Rule of Bankruptcy Procedure 9019.

**5.05: Estimation of Claims**. The Debtor may at any time request that the Bankruptcy Court estimate any contingent or unliquidated Claim or Disputed Claim pursuant to § 502(c) of the Bankruptcy Code regardless of whether a Debtor previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection. The Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to such objection

**5.06: Unclaimed Property/Unclaimed Personal Property**. If any Distribution under the Plan remains unclaimed for a period of six (6) months after it has been delivered (or attempted to be delivered) in accordance with the Plan to the holder entitled thereto, such unclaimed property shall be forfeited by such holder. The holder of the Claim or Administrative Claim previously entitled to such unclaimed property shall cease to be entitled thereto, and such property shall be retained by the Debtor pursuant to the terms of the Plan. The Debtor shall not make subsequent Distributions to recipients of unclaimed distributions or to Claimants who fail to present Distribution checks for payment within six (6) months of the issuance of the check.

## ARTICLE VI - EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**6.01: Rejection of Leases**. Any and all pre-petition unexpired leases and executory contracts that were not previously assumed or rejected during the pendency of the Debtor's case shall be rejected upon confirmation of the Plan. Entry of the Confirmation Order shall constitute the rejection, pursuant to §§ 365(a) and 1123(b)(2) of the Bankruptcy Code, of any executory contracts and unexpired leases rejected pursuant to this Plan.

**6.02: Claims for Rejection Damages.** A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than days after the date on which the court enters the order confirming this Plan.

## ARTICLE VII – MEANS FOR IMPLEMENTATION OF PLAN

**7.01: Plan Funding.** The Plan shall be funded solely from the Net Proceeds.

**7.02: Post-Confirmation Management of the Reorganized Debtor.** Gregg Carey, as sole member of Sleeping Monkey LLC, the managing member of the Debtor, shall continue to manage Section 119 LLC pursuant to applicable non-bankruptcy law, the Debtor's certificate or articles of incorporation and bylaws, as each of the same may be amended from time to time, and for the purpose of winding down its affairs and making necessary distributions under the Plan. In exchange for his continued services, the Debtor shall pay $20,000 for post-closing services.

**7.03: Tax Consequences of the Plan.** Creditors and Equity Interest Holders Concerned with how the Plan may affect their Tax Liabilities should consult with their own accountants, attorneys, and advisors.

## ARTICLE VIII – GENERAL PROVISIONS

**8.01: Notices.** Except as otherwise specified, all notices and requests will be given by email and by first class mail, certified or registered mail, return receipt requested, express mail or similar overnight delivery service or hand delivery, and any such notice or request will be deemed to have been given when received. Notices will be delivered as follows:

Section 119 LLC
29 Worth Ave
Hudson, New York 12534
Attention: Gregg Carey
Email: gregg@section119.com

and

Whiteman Osterman & Hanna LLP
Justin A. Heller, Esq.
*Attorneys for Debtor*
80 State Street, 11th Floor
Albany, New York 12207
Email: jheller@woh.com

**8.02: Confirmation by Cramdown Method.** The Debtor hereby requests confirmation of this Plan pursuant to Bankruptcy Code § 1191(b) with respect to any Impaired Class that does not vote to accept this Plan.

**8.03: Revocation or Withdrawal of the Plan**. The Debtor reserves the right to revoke or withdraw the Plan at any time prior to the Effective Date. If the Debtor revokes or withdraws the Plan, then the Plan shall be deemed null and void.

**8.04: Construction**. The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the definitions in Article X.

**8.05: Time**. In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth herein, the provisions of Bankruptcy Rule 9006 shall apply.

**8.06: Governing Law**. Except to the extent that the Bankruptcy Code or other federal law is applicable, the rights, duties and obligations of any Entity arising under the Plan shall be governed by, and construed and enforced in accordance with, the internal laws of the State of New York, without regard to New York choice of law provisions.

**8.07: Execution of Plan Documents**. Upon application by the Debtors, the Court may issue an order directing any necessary party to execute, deliver, or to join in the execution or delivery of an instrument or document, and to perform any act necessary for the consummation of this Plan.

**8.08: Effective Date**. The effective date of this Plan is the day that is 30 days after the entry of the confirmation order. If, however, a stay of the confirmation order is in effect on that date, the effective date will be the day after the date on which the stay expires or is otherwise terminated.

**8.09: Headings.** The headings used in this Plan are inserted for convenience only and constitute neither part of this Plan nor in any manner affect the provisions or interpretations of this Plan.

**8.10: Enforceability.** Should any provision of this Plan be determined to be unenforceable for any reason, such determination will in no way limit or affect the enforceability or operative effect of any other provision of this Plan.

**8.11: Exemption from Transfer Taxes.** Pursuant to § 1146(a) of the Bankruptcy Code, the issuance, transfer or exchange of notes, documents, agreements, or instruments under this Plan, in furtherance of, or in connection with this Plan, shall not be subject to any stamp, real estate transfer, mortgage recording or other similar tax.

**8.12: Binding Effect.** The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity.

**8.13: Corporate Governance.** Gregg Carey, as sole member of Sleeping Monkey LLC, the managing member of the Debtor, shall continue to manage Section 119 LLC pursuant to applicable non-bankruptcy law, the Debtor's certificate or articles of incorporation and bylaws, as each of the same may be amended from time to time, and for the purpose of winding down its affairs and

making necessary distributions under the Plan.

**8.14: Retention of Jurisdiction**. The court confirming the Plan may exercise jurisdiction to the full extent necessary to administer this case after Plan confirmation and to adjudicate any related adversary proceedings or contested matters, including those relating to the Plan, such as concerning the Plan's construction, implementation, or modification. Neither this provision nor anything in this Plan constitutes a limitation on or an expansion of the jurisdiction authorized by title 28 of the United States Code.

**8.15: Revesting.** Subject to the provisions of and for the purposes of distributions in accordance with the Plan, and pursuant to Bankruptcy Code § 1141(b) and (c), all Assets, including all Causes of Action, shall revest in the Debtor on the Confirmation Date, and such revested property shall be free and clear of all liens, claims, encumbrances and interests, except as otherwise provided in the Plan.

**8.16: Reservation and Settlement of Claims.** The Debtor will retain and have the right to enforce any and all present and future rights, claims, avoidance actions, or any other causes of action against any Person, including rights that arose before, on or after the Filing Date. Except as provided for in the Plan, all present or future rights, claims avoidance actions, or other causes of action against any Person that existed prior to the Effective Date are preserved without limitation.

**8.17: Default**. In the event of default by the Debtor under this Plan, a Creditor of any Class shall give notice of such default to the Debtor and its counsel pursuant to the notice provisions of this Plan, whereupon, the Debtor shall have the right to cure such default within thirty (30) days of notice thereof. In the event such default is not so cured, the Creditor(s) having provided notice shall have the rights and remedies provided under the Code and in this Plan, and under other applicable law.

## ARTICLE IX – DISCHARGE

**9.01: Consensual Plan**. If the Debtor's Plan is confirmed under § 1191(a), on the effective date of the Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debt:

(i) imposed by this Plan; or
(ii) to the extent provided in § 1141(d)(6).

**9.02: Cramdown Plan**. If the Debtor's Plan is confirmed under § 1191(b), confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments due within the first 3 years of this Plan, or as otherwise provided in § 1192 of the Code.

**9.03: Injunction**. As of the Effective Date, all Entities that have held, currently hold or may hold a Claim or other debt or liability against the Debtor are enjoined from taking any action to collect or recover in any manner on account of any such Claims, debts or liabilities from any or all of the Assets, except as otherwise provided in the Plan.

**9.04: Full Satisfaction.** Furthermore, but in no way limiting the foregoing, except as otherwise specifically provided by this Plan, the Distributions and rights that are provided in this Plan will be in complete satisfaction, discharge and release of (i) all Claims and Causes of Action against, liabilities of, liens on, charges, encumbrances, security interests, obligations of and interests in the Debtor, the Assets, or the direct or indirect Assets and properties of the Debtor, whether known or unknown, and (ii) all Causes of Action, whether known or unknown, either directly or derivatively through the Debtor, or the successors and assigns of the Debtor based on the same subject matter as any Claim or any other interests, in each case, regardless of whether a proof of Claim was filed, whether or not Allowed, and whether or not the holder of the Claim has voted on this Plan, or based on any act or omission, transaction or other activity or security, instrument or other agreement of any kind or nature occurring, arising or existing prior to the Confirmation Date that was or could have been the subject of any Claim, in each case regardless of whether a proof of Claim was filed, whether or not Allowed and whether or not the holder of the Claim has voted on this Plan

## ARTICLE X

## MODIFICATION OF THIS PLAN

9.1 **Modification.** The Debtor reserves the right, according to the Bankruptcy Code, to amend or modify the Plan before its substantial consummation by Bankruptcy Court Order. After the Confirmation Date, the Debtor may, upon order of the Bankruptcy Court, and according to § 1193 of the Bankruptcy Code, remedy any defect or omission, or reconcile any inconsistencies in the Plan in such manner as may be necessary to carry out the purposes and intentions of the Plan.

9.2 **Prior Votes on Modification.** A Claimant that has accepted or rejected this Plan will be deemed to have either accepted or rejected, as the case may be, this Plan as modified or amended, even if the modifications or amendments are made after the solicitation of votes of acceptance or rejection of this Plan, unless the Bankruptcy Court orders that such Claimant may change its previous vote within a time established by the Bankruptcy Court for such change to be made.

## ARTICLE XI - DEFINITIONS

Whenever from the context it appears appropriate, each term stated in either the singular or the plural will include the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender will include the masculine, the feminine and the neuter. The words “herein”, “hereof”, “hereunder”, and others of similar import refer to the Plan as a whole and not to any particular section, sub-section or clause contained in the Plan. Unless the context requires otherwise, the following words and phrases will have the meanings set forth below whether or not used in initially capitalized form in this Plan. Capitalized words and phrases not otherwise defined herein shall have the meaning ascribed to them in the Bankruptcy Code:

Administrative Claim means any Professional Charges of a Chapter 11 Professional Allowed under § 503(b) of the Bankruptcy Code that become an Allowed Claim, the fees payable

to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6) and Allowed Claims for actual, necessary costs and expenses incurred after the Filing Dates for preserving the Debtor's estate.

Allowed means, with respect to Claims, (a) any Claim against the Debtor, proof of which is timely filed or by order of the Bankruptcy Court is not or will not be required to be filed, (b) any Claim that has been or is hereafter listed in the schedules of liabilities filed by the Debtor, as liquidated in amount and not disputed or contingent or (c) any Claim allowed pursuant to this Plan or by Final Order and, in each such case in (a) and (b) above, to which either (i) no objection to allowance has been interposed within the applicable period fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court or (ii) such objection is so interposed and the Claim will have been allowed by a Final Order (but only to the extent so allowed).

Assets means all property of the Debtor as defined in § 541(a) of the Bankruptcy Code.

Ballot means with respect to any Class of Claims that is Impaired and entitled to vote under this Plan, the forms being distributed to holders of Impaired Claims to be used for accepting or rejecting this Plan.

Bankruptcy Code means title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*, as amended from time to time, as applicable to the Reorganization Case.

Bankruptcy Court means the United States Bankruptcy Court for the Northern District of New York, or any court having jurisdiction under title 28 of the United States Code over the Reorganization Case.

Bankruptcy Rules means the Federal Rules of Bankruptcy Procedure, as amended, from time to time, promulgated under § 2075 of Title 28 of the United States Code and the Local Rules of the Bankruptcy Court, as applicable to the Reorganization Case.

Business Day means any day other than a Saturday, Sunday or "legal holiday" as defined in Bankruptcy Rule 9006(a).

Cash means cash and cash equivalents in U.S. dollars.

Causes of Action means all actions, causes of action, suits, accounts, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment, claims, counter-claims and affirmative defenses whether known or unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, unsecured and whether asserted or assertable directly or derivatively, in law, equity or otherwise.

Chapter 11 Professionals means the professionals retained by the Debtor wherever they are referred to collectively in the Plan, the retention of which has been approved by the Bankruptcy Court, and any other professionals who are authorized to be compensated from the estate by Final Orders of the Bankruptcy Court.

Claim means (a) any right to (i) payment from the Debtor, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed,

undisputed, legal, equitable, secured or unsecured or (ii) an equitable remedy for breach of performance if such breach causes a right to payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured, or (b) any claim arising any time before the Confirmation Date for the alleged responsibility of the Debtor for any environmental conditions arising from an event that occurred before the Confirmation Date, despite when the clean up of such environmental condition commenced. When used with respect to any litigation, the term "Claim" will also include any claim that has been or could be asserted in such litigation. Notwithstanding anything to the contrary set forth in this Plan, for purposes of this Plan, the term "Claim" will have the broadest possible meaning permitted by applicable law.

Claimant means the holder of any Claim.

Class means any group of Claims classified by this Plan pursuant to § 1122 of the Bankruptcy Code, as described in Article II (Classification of Claims) herein.

Confirmation Date means the date on which the Confirmation Order entered on the docket maintained by the Clerk of the Bankruptcy Court with respect to the Reorganization Case becomes a Final Order.

Confirmation Hearing means the date or dates on which the Bankruptcy Court conducts a hearing on confirmation of this Plan.

Confirmation Order means the order of the Bankruptcy Court confirming this Plan.

Creditor has the meaning set forth in § 101(10) of the Bankruptcy Code.

Disclosure Statement means that certain Disclosure Statement to Accompany Debtor's Plan of Reorganization Under Chapter 11 of the Bankruptcy Code dated of even date herewith, including all exhibits and schedules thereto, as may be modified or amended, as approved by the Bankruptcy Court pursuant to § 1125 of the Bankruptcy Code.

Disputed or Disputed Claim means with respect to Claims, any Claim that is not Allowed.

Disputed Claim Reserve means the reserve established for Disputed Claims according to this Plan.

Distributions means payments to the various classes of Claims as provided in this Plan.

Entity means any individual, corporation, limited or general partnership, limited liability company, joint venture, association, joint stock company, estate, entity, trust, trustee, United States Trustee, unincorporated organization, government, governmental unit (as defined in the Bankruptcy Code), agency or political subdivision thereof.

Filing Date means the date on which the Debtor's Reorganization Case was commenced.

Final Order means an order, ruling or judgment of the Bankruptcy Court or other court of competent jurisdiction that may hear appeals from the Bankruptcy Court (i) which is not stayed,

(ii) the time to appeal or to seek review by motion for rehearing, petition for *certiorari* or otherwise from which having expired, without a pending appeal, motion for rehearing, petition for *certiorari* or application for review having been filed, and (iii) which is in full force and effect.

Impaired means any Claim impaired within the meaning of § 1124 of the Bankruptcy Code.

Person means any individual or Entity, regardless of the form of business organization.

Priority Claim means Claims under § 507(a)(3) through § 507(a)(8) of the Bankruptcy Code.

Professional Charges means the Allowed interim and final Claims for fees and expense reimbursement of Chapter 11 Professionals.

Pro Rata Share or Pro Rata means a proportionate share, so that the ratio of the consideration distributed on account of an Allowed Claim in a Class to the amount of such Allowed Claim is the same as the ratio of the amount of the consideration distributed on account of all Allowed Claims in such Class to the amount of all Allowed Claims in such class, or if the context so requires, to the amount of all Allowed Claims in a designated portion of such Class.

Rejection Claim means any Claim arising out of the rejection of a lease or executory contract pursuant to § 365 of the Bankruptcy Code.

Reorganization Case means the above-captioned chapter 11 case commenced by the Debtor.

Schedules means the Schedules of Assets and Liabilities, the Schedules of Executory Contracts and Unexpired Leases and the Statement of Financial Affairs filed by the Debtor, pursuant to § 521 of the Bankruptcy Code, Rule 1007 of the Bankruptcy Rules and the Official Bankruptcy Forms of the Bankruptcy Rules as such statements and schedules have been or may be supplemented or amended through the Confirmation Date.

Secured Claim means a Claim that is either:

(i) secured by collateral of the Debtor, the amount of which Claim is equal to or less than the value of such collateral (a) as set forth in this Plan, (b) as agreed to by the holder of such Claim and the Debtor, or (c) as determined by a Final Order in accordance with § 506(a) of the Bankruptcy Code;

(ii) deemed a Secured Claim pursuant to this Plan; or

(iii) secured in the amount of any valid right of setoff of such holder under § 553 of the Bankruptcy Code.

Unsecured Claim means any Claim arising prior to the Filing Date as against a Debtor, other than an Administrative Claim, Priority Claim, or Secured Claim.

[Signature Page for Chapter 11 Plan]

Dated: June 9, 2026

**SECTION 119 LLC**

By: /s/ Gregg Carey
Gregg Carey
Managing Member
Sleeping Monkey LLC

Dated: June 9, 2026

**WHITEMAN OSTERMAN & HANNA LLP**
*Attorneys for Debtor*

By: /s/ Justin Heller
Justin A. Heller, Esq.
*Attorneys for Debtor*
80 State Street, 11th Floor
Albany, New York 12207
Phone: (518) 487-7600